504 So.2d 934 (1987)
Gary Dale STUART
v.
CITY OF MORGAN CITY, Parish of St. Mary and State of Louisiana.
No. CA 85 1575.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
*935 Kevin Patrick Monahan, Law Office of Raymond Charles Vinet, Baton Rouge, for plaintiff.
Robert M. Mahony, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, for City of Morgan City and USF & G.
Cassandra Simms, Yolanda Johnson and Charles L. Patin, Jr., La. Dept. of Justice, Baton Rouge, for State of La., defendants and third party plaintiffs.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
LANIER, Judge.
This is a suit for damages in tort in which the plaintiff alleges he dove into a lake at a public park, struck his head on the lake bottom and severed his spinal cord. Made defendants were the City of Morgan City (City), the Parish of St. Mary (Parish) and the State of Louisiana (State). The City answered and pled the defenses of assumption of risk and comparative negligence. The State answered, pled the defenses of comparative negligence and assumption of risk and filed a third party demand against the City for indemnification under a lease agreement. The Parish and its insurer, United States Fidelity & Guaranty Company (USF & G), filed a peremptory exception pleading the objection of no cause of action. The Parish also answered and pled the defense of comparative negligence. The Parish also filed a motion for summary judgment in which it asserted it had no custody or control of the property where the accident occurred. After a hearing, summary judgment was *936 granted in favor of the Parish, and this judgment was not appealed. The City and State then separately filed motions for summary judgment pleading the immunity of La.R.S. 9:2791 and 2795. By judgment dated August 5, 1985, summary judgment was granted in favor of the City. On August 8, 1985, the plaintiff filed an amended petition adding United Fire and Casualty Company (United), the City's insurer, as a party defendant. On August 20, 1985, United filed a motion for summary judgment and a peremptory exception raising the objections of no cause of action and prescription. On September 12, 1985, the trial court granted summary judgment in favor of United and sustained United's peremptory exception pleading the objection of prescription. By judgment dated September 21, 1985, summary judgment was granted in favor of the State. On October 2, 1985, the plaintiff filed a motion to devolutively appeal the City, State and United judgments.

FACTS
The plaintiff asserts the following facts in his petition as amended:
III.
On August 22, 1982, at approximately 2:30 o'clock a.m. your petitioner went to a park on Lake Palourde, off Highway 70, to swim; the part [sic] is in the custody and control of the State of Louisiana by virtue of a navigable water body, and in the custody and control of the City of Morgan City through lease contract number 1124, and is in the custody and control of the Parish of St. Mary by virtue of its location within the Parish limits.
IV.
Upon entering the open gates, your petitioner proceeded to the edge of shore where sand bags were stacked several feet high.
V.
Your petitioner dove off of the sand bags into the shallow water approximately one (1') foot deep.
VI.
Your petitioner struck his head on the bottom of the lake bed, severing his spinal cord at C-6 and rendering him a quadriplegic.
VII.
The cause in fact of the accident herein sued upon was the negligence of the defendants for their willful and malicious failure to warn against a dangerous condition and structure; and the strict liability of the defendants for creating a defective sand bag bank or structure which posed an unreasonable risk of harm to your petitioner.
VIII.
The negligence and strict liability of defendants are hereinafter listed specifically, but not exclusively as follows:
A. Failure to keep gates repaired and locked;
B. Failure to warn of shallow water;
C. Failure to adequately warn of the risks of diving;
D. Failure to repair defective shoreline; and,
E. Failure to replace removed warning signs.

APPLICABILITY OF LA.R.S. 9:2791 AND 2795 TO INSURERS OF LANDOWNERS

(Assignment of Error D)
Appellant contends the immunity conferred by La.R.S. 9:2791 and 2795 does not extend to insurers of landowners.
As previously indicated, the trial court granted summary judgment in favor of the insurer, United, and sustained United's peremptory exception pleading the objection of prescription. The appellant appealed both of these rulings. However, on appeal the ruling on the prescription issue has not been assigned as error or briefed. Issues neither assigned as error nor *937 briefed are considered abandoned. Rules 1-3 and 2-12.4, Uniform RulesCourts of Appeal; Vining v. Bardwell, 482 So.2d 685 (La.App. 1st Cir.1985), writ denied, 487 So.2d 439 (La.1986). Because the prescription issue has been abandoned, the judgment sustaining the exception and dismissing the claim against United is now final, and the issue asserted in this assignment of error is now moot.

SUMMARY JUDGMENT
In Topole v. Eidson, 464 So.2d 406, 409 (La.App. 1st Cir.1985), appears the following:
The law applicable to summary judgments is set forth in Massingale v. Sibley, 449 So.2d 98, 100 (La.App. 1st Cir. 1984), as follows:
The law is well settled that a motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966; Stallings v. W.H. Kennedy & Son, Inc., 332 So.2d 787 (La. 1976). Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976). The burden of showing that there is not a genuine issue of material fact in dispute is upon the mover for summary judgment. Any doubt is resolved against the granting of a summary judgment and in favor of a trial on the merits to resolve disputed facts. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963).

See also Quintana Petroleum Corporation v. Alpha Investments Corporation, 435 So.2d 1092 (La.App. 1st Cir.1983). If the supporting documents presented by a party moving for a summary judgment are sufficient to resolve all genuine issues of fact, the burden shifts to the opposing party to present evidence showing that material facts are still at issue. At this point, the opposing party may no longer rest on the allegations and denials contained in his pleadings. La.C.C.P. art. 967; Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Broussard v. Henry, 423 So.2d 67 (La.App. 1st Cir.1982).

FACTUAL ISSUE ABOUT WILLFUL OR MALICIOUS FAILURE TO WARN

(Assignment of Error A)
Appellant contends that "[b]ecause there have been several diving accidents on Lake Palourde ... the defendants had a duty to warn because of their previous knowledge"; that a review of La.R.S. 9:2791 and 2795 "shows that liability will not extend to `Landowners' except for `willful or malicious failure to warn against a dangerous condition, use, structure or activity' "; that the defendants did not file any affidavits about notice of previous accidents; and, therefore, "there still remains an issue of fact as to whether or not the defendants were willful and malicious in their failure to warn of dangerous conditions." The record shows the appellant alleged willful or malicious failure to warn in his petition, the State and the City denied this allegation in their answers, and none of the parties filed documentary evidence on this factual issue. Stuart admitted in his deposition that he swam in Lake Palourde at least twenty times before the accident and was aware the water was shallow in the area around the beach.
However, it appears that the appellant's argument fails as a matter of law because his basic premise that the State and City had a duty to warn is in error.
In Van Pelt v. Morgan City Power Boat Association, Inc., 489 So.2d 1346, 1348 (La. App. 1st Cir.1986), writ granted, 493 So.2d 627 (La.1986), a case almost identical to the instant case, the facts are set forth as follows:
On May 22, 1982, plaintiff and friends paid their admission fee and attended *938 boat races held on Lake Palourde under the auspices of the Association. About 4:15 p.m., plaintiff and his girl friend decided to cool off. They walked to an area where cement bags had been placed along the shore to prevent erosion. Plaintiff dove into the water and broke his neck.
In Van Pelt, the plaintiff argued that the defendants consciously decided not to give him any warning of the shallow water near the shore of Lake Palourde; such action constituted a willful failure to warn; by exempting willful failure to warn, the statute imposed a duty on the owner and, therefore, the defendants were not entitled to the benefit of the statute. This court rejected this argument with the following rationale:
Addressing directly the scope of landowner duty in cases involving diving injuries, we held in Caillouette v. Cherokee Beach & Campgrounds, Inc., 386 So.2d 666 (La.App. 1st Cir.1980), writ denied, 387 So.2d 597 (La.1980), that a landowner is not required to warn of the obvious danger of diving into unknown waters. See also Tobey v. State, 454 So.2d 144 (La.App. 1st Cir.1984). In Haney v. General Host Corporation, 413 So.2d 624, 626 (La.App. 1st Cir.1982), we ruled that a factor in determining the reasonableness of the danger was the ease with which the plaintiff could discover the danger. In this case, plaintiff needed only to walk a few feet into the water to discover that it was shallow. Indeed, the primary duty of care in ascertaining whether it is safe to dive is upon the diver. Jolivette v. City of Lafayette, 408 So.2d 309 (La.App. 3rd Cir.1981), writ denied, 413 So.2d 495 (La.1982), cert. denied, 459 U.S. 867, 103 S.Ct. 147, 74 L.Ed.2d 124 (1982).
Thus we must ask: did the Legislature intend to impose upon landowners covered by LSA-R.S. 9:2795 a duty to warn that is greater than that imposed in a traditional tort action? The purpose of the statute is to encourage the opening of lands for recreational uses. Keelen [v. State, Department of Culture, Recreation and Tourism], 463 So.2d [1287] at 1289 [(La.1985)]; Landry [v. Board of Levee Commissioners of Orleans Levee District], 477 So.2d [672] at 673 [(La.1985)]; La. Acts 1975, No. 615, § 1. Plaintiff would have us hold that in order to achieve this goal the Legislature relieved the landowner of liability but increased his duty to warn; to benefit from the statute, the owner would have to warn of the most obviously riskful conditions or activities. Specifically, owners of shallow ponds or lakes or rivers or creeks or bayous would have to post warnings at all possible diving points that the water is dangerously shallow. Presumably, if the water is deep, the owners would then have to warn of the danger of drowning. If a tree is tall, the owner would have to warn against the danger of climbing. This will encourage owners to open their lands? To state the argument is to refute it.
....
In light of these decisions, finding that the defendants here breached a duty owed this plaintiff (who had often been swimming in Lake Palourde and knew that parts of it were shallow), would be inconsistent with the legislative intent embodied in LSA-R.S. 9:2795 B(1) and (2). Such a finding would impose a significantly greater duty on defendants than the duty they owed invitees under the pre-Cates law. Imposing such a duty when the Legislature has specifically determined that plaintiff is not an invitee would vitiate the Legislature's will. We hold that LSA-R.S. 9:2795 imposes no duty on these defendants to warn this plaintiff under the facts of this case and that they are not excluded from the statute's coverage because of any failure to warn this plaintiff.
[Footnote omitted.]
Van Pelt, 489 So.2d at 1350-1351.
Under the facts and circumstances of this case, the City and State owed Stuart no duty to warn.
This assignment of error is without merit.

*939 APPLICABILITY OF LA.R.S. 9:2791 AND 2795 TO STRICT LIABILITY

(Assignment of Error B)
The appellant contends La.R.S. 9:2791 and 2795 are not applicable to strict liability.
In Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141, 1143 (La.App. 1st Cir.1983), writ denied, 435 So.2d 429 (La.1983), this court observed as follows:
The owner, or person having custody, of immovable property has a duty to keep such property in a reasonable safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence.... This duty is the same under the strict liability theory of La.C.C. art. 2317 as under the negligent liability theory of La.C.C. art. 2315.... The difference in proof between these theories of liability is that under La.C.C. art. 2315, it must be shown that the owner, or person in custody, either knew or should have known of the risk, whereas under La.C.C. art. 2317, a claimant is relieved of proving the defendant's scienter.... Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the `custody' of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of the duty); and (3) that the defect in the property was a cause in fact of the resulting injury. In both negligent and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing.... Under either theory of liability, the court must decide if the risk which causes the injury is within the ambit of protection of the duty.
La.R.S. 9:2791(A) provides as follows:
An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.

[Emphasis added.]
At the time of the accident herein, La.R.S. 9:2795(B) provided as follows:
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.

(3) Incur liability for any injury to person or property incurred by such person.

[Emphasis added.]
The essence of La.R.S. 9:2791 and 2795 is that an owner who qualifies for their immunity owes no duty of care and cannot incur liability. No distinction is made in either statute between negligent and strict liability. Since a duty, if it exists, under negligent liability would be the same as that under strict liability, it must follow that, if there is no duty under negligent liability, there is no duty under strict liability. The issue is not one of a standard of conduct as asserted by the appellant, but the existence of a duty owed by the defendants to the appellant.
This assignment of error is without merit.

*940 APPLICABILITY OF LA.R.S. 9:2791 AND 2795 TO PUBLIC OWNERS

(Assignment of Error C)
The appellant contends the immunities of La.R.S. 9:2791 and 2795 are not applicable to public (as distinguished from private) owners.
This contention has been rejected in Van Pelt, 489 So.2d at 1349 and Pratt v. State, 408 So.2d 336 (La.App. 3rd Cir.1981), writ denied, 412 So.2d 1098 (La.1982).
This assignment of error is without merit.

APPLICABILITY OF LA.R.S. 9:2791 AND 2795 TO THE PLACE WHERE THE ACCIDENT OCCURRED

(Assignment of Error E)
Appellant contends La.R.S. 9:2791 and 2795 do not apply to the place where the accident occurred because it is a noncommercial, man-made, fenced-in, shell beach with parking lot with a cement and sandbag ledge located a few blocks from a densely populated city limits (Morgan City), citing Landry v. Board of Levee Commissioners of Orleans Levee District, 477 So.2d 672 (La.1985) and Keelen v. State, Department of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985).
In Van Pelt, this court considered Landry and Keelen and the applicability of La.R.S. 9:2791 and 2795 to the Lake End Park which is located about one-half mile northeast of Morgan City. In Van Pelt, 489 So.2d at 1353, we observed as follows:
Although the site of this accident is clearly more rural and undeveloped than that in Landry, the question of the character of the land was not much addressed in the record before us. However, a Lake Palourde Park Master Development Plan prepared by Environomics, Inc., in 1984 was introduced. It contains a detailed description of the area, including Lake Front Parkway, where the accident occurred, and Lake End Park, a picnic and camping facility southwest of the Parkway. The study revealed that the nearest residential concentration is about one-half mile southwest of Lake End Park and that only occasionally do pedestrians visit the Park. We recognize the proximity of the area to Morgan City, but we conclude that this natural, 18-square-mile lake, with improvements that `are merely conveniences incidental to the use of the land for enumerated recreational activities and [which] do not of themselves take property out of a rural, undeveloped classification' is the type of rural or semi-rural area envisioned by the statute. Keelen, 463 So.2d at 1290.
The documentary evidence filed in connection with these motions for summary judgment indicates that the place where the accident occurred herein is located northeast of Lake End Park, even further from Morgan City. Van Pelt is controlling.
This assignment of error is without merit.

CONSTITUTIONALITY OF LA.R.S. 9:2791 AND 2795

(Assignment of Error F)
Appellant contends these statutes violate the due process and equal protection provisions of the constitutions of Louisiana and the United States by denying a citizen the right to bring a cause of action for personal injury occurring on noncommercial land used for recreational purposes.
The purpose of these immunity statutes is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." La. Acts 1975, No. 615 § 1; Landry, 477 So.2d at 674-675; Keelen, 463 So.2d at 1290. In Sibley v. Board of Supervisors of Louisiana State University, 462 So.2d 149, 155 and 157 (La.1985), appears the following:
Equal protection and due process guarantees of the state and federal constitutions, however, protect only against the violation of individual rights by unreasonable statutory limitations. In the area of equal protection, a two-stage process of analysis is employed. Initially, a determination is necessary as to whether the subject Act disadvantages a `suspect class' or infringes upon a fundamental right. If so, a strict scrutiny analysis is *941 required; if not, it is only necessary to determine whether the act rationally furthers some legitimate, articulated state purpose or goal. Bazley v. Tortorich, 397 So.2d 475, 483 (La.1981). We reaffirm, just as in Bazley, that a victim's right to sue in tort for full recovery for an injury is not a fundamental right. Classifications based on race, religion or political beliefs are, of course, absolutely prohibited, but other classifications are tested on a less rigorous basis, depending on the character of the classification involved and the strength of the state interest supporting the distinction. Hargrave, `Statutory' and `Hortatory' Provisions of the Louisiana Constitution of 1974, 43 La.L.Rev. 647, 670 (1983).
....
Similarly, an analysis of statutes for substantive due process reveals that cases involving economic and social welfare legislation are to be distinguished from cases involving fundamental civil rights. A statute enacted to limit liability on malpractice claims for state medical services cannot be classified as an infringement of a fundamental civil right. For legislation involving economic and social welfare interests, the test of substantive due process is whether the regulation is reasonable in relation to the goal sought to be attained and is adopted in the interest of the community as a whole.
In Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1107-1108 (La.1985), the Court defined equal protection under the Louisiana constitution as follows:
Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. With the adoption of these guarantees Louisiana moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment.
[Footnotes omitted.]
Appellant's right to sue in tort for recovery for an injury is not a fundamental right; these immunity statutes rationally further a legitimate, articulated state purpose. There is no equal protection violation. The statutes are reasonable in relation to the goal sought to be attained and were adopted in the interest of the community as a whole. There is no due process violation.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgments of the trial court granting summary judgment in favor of the City and the State are affirmed at appellant's costs.
AFFIRMED.