728 So.2d 487 (1999)
Jason Adam EBARB, Plaintiff-Appellant,
v.
GUINN BROTHERS, INC., et al., Defendants-Appellees.
No. 31,426-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1999.
*488 Peters, Ward, Bright & Hennessy by J. Patrick Hennessy, Shreveport, for Plaintiff-Appellant.
Mayer, Smith & Roberts by Caldwell Roberts and Dalton Roberts Ross, Shreveport, for Defendants-Appellees.
*489 Before NORRIS, WILLIAMS and STEWART, JJ.
NORRIS, Chief Judge.
The plaintiff, Jason Ebarb, appeals a summary judgment dismissing two defendants, Elaine T. Potter and Gwendolyn T. Roach, from his lawsuit. For the reasons expressed, we reverse and remand.

Procedural background
The underlying facts are reproduced from Ebarb's prior appeal in Ebarb v. Guinn Bros. Inc., 29,179 (La.App. 2 Cir. 2/26/97), 691 So.2d 228, writ denied 97-1120 (La.6/13/97), 695 So.2d 981:
On May 12, 1992, the plaintiff, then 17 years old, was riding his four-wheel all terrain vehicle on property near Colquitt Road in Caddo Parish, owned by Mrs. Potter and Mrs. Roach. The plaintiff did not have permission to be on the property. While riding on the property, the plaintiff encountered an 8-10 feet deep hole that had washed out around a culvert. The hole was obscured by overgrown grass and weeds. The plaintiff ran off into the washout and alleges that he sustained serious head and hip injuries. The plaintiff had fishing equipment with him at the time of the accident and assumes he was going fishing. However, he has no memory of the accident and there were no witnesses.
On March 23, 1993, the plaintiff filed suit against [inter alia] Mrs. Potter and Mrs. Roach. * * * On May 8, 1995, the landowners filed the motion for summary judgment now before this court for consideration, arguing that, under Entrevia v. Hood, 427 So.2d 1146 (La.1983), they had no duty to warn the plaintiff of alleged hazardous conditions or structures on the premises. They also asserted that they were immune from liability under La. R.S. 9:2791 and 9:2795, which grant limitation of liability to an owner of land used for recreational purposes.
On October 16, 1995, the trial court granted summary judgment in favor of the landowners. In written reasons for judgment, the trial court found that the accident occurred on fenced, rural, remote, undeveloped property owned by Mrs. Potter and Mrs. Roach. The court found that the plaintiff was trespassing on the land. Citing Entrevia v. Hood, supra, the trial court found that the landowners did not have a duty to warn the plaintiff of the hole on the property.
Ebarb appealed the summary judgment. This court held that whether the condition of the property posed an unreasonable risk of harm was a legal question which may be decided on motion for summary judgment.[1] We also held, however, that the "unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically to the facts of the case." This was because the movers had provided "little documentation in support of their contention that no duty was owed to the plaintiff[.]" Specifically, the Xeroxed photos of the accident scene were not clear enough to show if the hole was in a roadway; the affidavits differed over whether the property was actually fenced and posted; and there was insufficient summary judgment evidence that the tract was "rural and undeveloped." We therefore reversed the summary judgment and remanded the case for further proceedings.
The landowners filed the instant motion for summary judgment on December 27, 1997. This motion advanced the same legal theories as before: Entrevia v. Hood, supra, absolves the owner of "isolated, unproductive, rural property" of the duty to warn the public of the risks thereon; La. R.S. 9:2791 grants limited immunity to the owner of property not used primarily for commercial recreational purposes; and La. R.S. 9:2795 limits the liability of owners of property used for recreational purposes. The movers attached a list of "undisputed material facts" and extensive documentation to their motion:
Affidavit of James Roach (Mrs. Roach's husband), who manages the property, stating that the tract is 70-80 acres of "rural or semi-rural, undeveloped land," lying outside the city limits, is currently *490 used for timberland, and has not been used for commercial recreational purposes.
Federal court judgment of January 14, 1954, "condemning and expropriating" the tract for flood control purposes pursuant to 33 U.S.C. § 593.
Affidavit of Mike Clingan, the Parish Assessor, stating that the land is assessed in "classes 12 and 13," or timberland.
Ebarb's 1994 deposition stating, inter alia, that he had never been on the property before, did not recall anything about the accident, and did not even know why he was there that day.
Ebarb's 1997 deposition stating that since the accident, he has visited the site several times and found that the hole is in a dirt road.
Affidavit of Mrs. Roach stating, inter alia, that the property is "rural and undeveloped, and fenced, with POSTED, KEEP OUT signs placed at various times in the past"; and that neither she nor her sister gave Ebarb the permission to be on the property.
Ebarb opposed the motion. He disputed certain items in the "list of undisputed facts and attached the following documents in support:
Affidavit of John Bowman, a registered civil engineer who surveyed the property, finding it to be "undeveloped urban property surrounded by subdivisions"; outside city limits but surrounded by incorporated subdivisions; lacking in posted signs; and containing improvements such as a powerline right of way, a sewage easement, and an improved bayou/drainage ditch.
Affidavit of Deputy Jimmy Miller, Ebarb's brother-in-law, stating that he never saw any posted signs around the property, and found the washout hole was completely hidden by overgrowth.
Affidavit of Mitchell Chism, a neighbor, who stated that the washout hole occurred soon after the City of Shreveport installed a culvert.
Deposition of Charles Cavender, another neighbor, who described the City's culvert installation in extenso, and "had heard" of motorcyclists and three-wheel riders using the tract and getting stuck in the hole.
Deposition of Charles Roach, stating inter alia that he knew people sometimes rode ATVs and hunted on the property, but he always ran them off; that the "wash" had been there as long as they had owned the property, although the City's attempt to install culverts had failed; and that he did nothing about the hole because no one had any business there.
Affidavit of Virgil Ebarb, the plaintiff's father, stating that there were no posted signs or any fence around the property; and that a "well defined dirt road"; ran right to the accident site.
On March 19, 1998 the District Court granted the landowners' motion. In written reasons for judgment, the court found the property was "rural, remote and undeveloped," the plaintiff was a "trespasser on undeveloped land unfamiliar to him," and there was no duty to warn him of the danger. Ebarb has appealed.

Applicable law
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966 A(2). After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. Art. 966 C(1). The burden of proof nevertheless remains with the mover. Art. 966 C(2). Recent amendments to art. 966 were intended to bring our procedure more closely into line with the Federal standard. Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied 97-0281 (La.3/14/97), 690 So.2d 41.[2] *491 The amendments are, of course, purely procedural and subject to retroactive application. Goodrich v. Caterpillar, Inc., 30,762 (La.App. 2 Cir. 8/19/98), 717 So.2d 1235. Appellate review of summary judgment is de novo, utilizing the same criteria that guide the trial court's grant of the judgment. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152. Whether a thing poses an unreasonable risk of harm is a "disputed issue of mixed fact and law or policy" and is peculiarly suited for the trier of fact, not for summary judgment. Tillman v. Johnson, 92-3277 (La.2/5/93), 612 So.2d 70.
The owner of property may be held liable to a person injured on the property under a theory of negligence if there is a defect on the property which causes the injury and the owner knew or should have known of the existence of the defect. La. C.C. art. 2315; Oster v. Department of Transp. & Dev., 582 So.2d 1285 (La.1991). Moreover, at the time of Ebarb's accident, the owner could also be held liable, under a theory of strict liability, to any person injured because of an unreasonably dangerous condition on the property. La. C.C. art. 2317; Loescher v. Parr, 324 So.2d 441 (La.1975); Entrevia v. Hood, 427 So.2d 1146 (La.1983).[3] Under either theory, the plaintiff must prove that the defendant had custody or garde of the thing which caused the damage, that the thing contained a defect (a condition posing an unreasonable risk of harm to the plaintiff), and that this defective condition caused the plaintiffs injuries. Oster v. Department of Transp., supra; Bradford v. Louisiana Downs, 606 So.2d 1370 (La.App. 2 Cir.1992). Whether a risk is unreasonable depends on a balancing of all relevant factors, e.g., the utility of the thing that caused the damage, the intended use of the property, and other social considerations. Id.
Special statutes regulate the liability of owners whose property is used for recreational purposes:
§ 2791. Liability of owner or occupant of property not used primarily for commercial recreational purposes.
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of persons to whom permission is granted.
B. * * * Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section. * * *
This statute applies when the property at issue is not used primarily for commercial recreational purposes. Verdin v. Louisiana Land & Expl. Co., 96-1815 (La. App. 4 Cir. 3/12/97), 693 So.2d 162, writs denied 97-1598, 97-1581 (La.9/26/97), 701 So.2d 994. However, the statute applicable to lands used for commercial recreational purposes, La. R.S. 9:2795, further defines "recreational purposes" to include "motorized vehicle operation for recreation purposes." Because of their correlative functions, these statutes must be read in pari materia. Id.; Monteville v. Terrebonne Parish Consol. Gov't, 567 So.2d 1097 (La.1990). To enjoy the immunity of these statutes, the owner must show that the property is "open and undeveloped," "natural and undeveloped *492 lands located in thinly-populated rural or semi-rural locales." Keelen v. State, 463 So.2d 1287 (La.1985). The owner must also show that the plaintiff's injury was the result of recreation that can be pursued in the "true outdoors." Ratcliff v. Town of Mandeville, 502 So.2d 566 (La.1987); Ebarb v. Guinn Bros., supra. The immunity must be strictly construed as it derogates from common or natural rights. Monteville v. Terrebonne Parish, supra.

Discussion
The threshold issue is the existence of liability based on negligence or strict liability. We have carefully examined the summary judgment evidence. This shows that the property was in the garde of the movers and that a condition of the propertythe washout was a cause of Ebarb's harm. However, on the critical question of whether this condition posed an unreasonable risk of harm, the evidence is not sufficient to show that Mrs. Potter and Mrs. Roach are entitled to judgment as a matter of law. In brief they rely on Entrevia v. Hood, supra, and chiefly on Oster v. Department of Transp., supra, cases in which the Supreme Court held that the owner owed no duty to the plaintiff because the dangerous posed by the property was not unreasonable. The movers correctly contend that Oster is nearly apposite to the instant case, as it involved a drainage ditch that was overgrown with grass and weeds and unapparent to the minor rider of a dirt bike.
The analysis in Oster, however, hinged on the fact that the drainage ditch lay immediately adjacent to a busy state highway and served the purpose of keeping water off the pavement, thus assuring the safety of drivers. Here, the depositions of Mr. Roach and Mr. Cavender recount the city's efforts to improve the washout; this may raise an inference the hole has social utility, e.g., drainage, which could override the owners' duty to the plaintiff. On the showing made, however, we cannot find that the utility of the washout or drain outweighs its risk, given the known use of the property and other social considerations, as a matter of law. For these reasons the summary judgment was improper for disposing of Ebarb's underlying negligence and strict liability claims at this juncture.
Even if liability could be established under negligence or strict liability, the owner may nevertheless be immune under the recreational use statutes. The principal issue on appeal is whether the immunity of R.S. 9:2791 may be conferred upon Mrs. Potter and Mrs. Roach by summary judgment. Ebarb concedes that at the time of his accident he was apparently intending to go fishing, which is an activity pursued in the "true outdoors." He urges, however, that the property is not rural, as it is bounded on three sides by subdivisions which are within Shreveport city limits, and it is not undeveloped, as it contains various man-made improvements.
As for the man-made structures (a dirt road, a ramp off Colquitt Road, a sewer line and utility easements), we would note that these do not necessarily remove property from the purview of 9:2791. The immunity has been routinely applied to property with modest improvements such as bathrooms, paved entrances, dirt roads with gates, and deer stands.[4] Immunity is not limited to virgin forest. However, on the extensive summary judgment evidence presented, we find that the cumulative effect of the improvements will require a weighing of the evidence to determine whether this tract is truly undeveloped.
Similarly, the rural or semi-rural nature of the property still poses a genuine factual and legal issue. At least two cases have cited proximity to residential areas as precluding summary judgment based on R.S. 9:2791 in favor of the property owner.
In Rateliff v. Town of Mandeville, supra, the Supreme Court reversed a summary *493 judgment in favor of the owner of a boat dock located within the town of Mandeville. The court also stated that the dock area was "adjacent to a frequently traveled Lakeshore Drive and within a stone's throw of a residential area."[5] The instant case is distinguished in that property is outside the city limits, but is similar to Ratcliff in that it is adjacent to a well traveled street and is surrounded on all sides by subdivisions inside city limits.
In Cheneau v. Apostolic Outreach Center, 529 So.2d 149 (La.App. 4 Cir.1988), the court of appeal affirmed a summary judgment in favor of the owner of a 20-acre tract near the rural farming community of Loranger in Tangipahoa parish. The tract contained a man-made pond in which the plaintiff's son nearly drowned. The court discussed the property's size, naturalness, and "remoteness or insulation from populated areas," specifically noting that one house was a mere 600 feet from the site of the accident. The court found that nearby residences did not change the rural character of the tract. The Supreme Court, however, summarily reversed, remanding the case for a trial on the merits. Cheneau v. Apostolic Outreach Center, 532 So.2d 754 (La.1988).[6] In the instant case, the adjacent subdivisions are inside city limits and are highly developed residential areas.
In short, the jurisprudence is unclear as to whether nearby subdivisions will alter the thinly-populated, rural or semi-rural nature of the property; the cases appear to discourage summary judgment when that factual question is presented. Moreover, the summary judgment evidence is not free of doubt. John Bowman, a registered civil engineer, described the property as "undeveloped urban property surrounded by subdivisions" while Mr. Roach characterized it as "rural or semi-rural, undeveloped land." This divergence of opinion definitely counsels against summary judgment disposition.
Finally, we are mindful that R.S. 9:2791 must be strictly construed to confer immunity only when it is plainly warranted. Monteville v. Terrebonne Parish, supra. In light of the applicable jurisprudence and the instant record, we cannot find that Mrs. Potter and Mrs. Roach have excluded all genuine issues of material fact and that they are entitled to judgment as a matter of law.

Decree
The summary judgment is therefore reversed and the case remanded for further proceedings. Appellate costs are assessed to appellees, Elaine Taylor Potter and Gwendolyn Taylor Roach.
REVERSED AND REMANDED.
STEWART, J., concurs.
NOTES
[1] The Supreme Court has subsequently held, however, that the determination whether a thing presents an unreasonable risk of harm is essentially factual and subject to manifest error review. Reed v. Wal-Mart Stores Inc., 97-1174 (La.3/4/98), 708 So.2d 362.
[2] Fed.R.Civ.P. 56(c); see also, Mark Tatum & William Norris III, Summary Judgment and Partial Judgment in Louisiana: The State We're In, 59 La. L.Rev. ___ (1998); cf. David W. Robertson, Summary Judgment and Burden of Proof: Effects of the 1996 Amendment, 45 La. Bar J. 331, 332 (1997).
[3] This theory of strict liability was eliminated by the enactment of La. C.C. art. 2317.1 by La. Acts 1996 (First Ex.Sess.), No. 1, effective April 16, 1996. See Ebarb v. Guinn Bros. Inc., supra, at fn. I; Frank L. Maraist & Thomas C. Gallagan Jr., Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law, 71 Tulane L.Rev. 339, 344-350 (1996).
[4] See Keelen v. State, supra; Woods v. United States, 95-1146 (W.D.La.10/6/95), 909 F.Supp. 437, aff'd 95-31121 (CA 5, 4/5/96), 84 F.3d 432; Matheme v. Cheramie, 94 0760 (La.App. 1 Cir. 9/26/95), 664 So.2d 130, writ denied 95-2596 (La.1/5/96), 666 So.2d 311; Singletary v. Crown Zellerbach, 554 So.2d 846 (La.App. 1 Cir.1989); Dear v. Crosby Chemicals Inc., 95-1309 (La.App. 3 Cir. 3/6/96), 670 So.2d 775, writ denied 96-1267 (La.6/21/96), 675 So.2d 1091.
[5] This tracks the discussion in Landry v. Board of Levee Com'rs, 477 So.2d 672, 675 (La.1985), a case which rejected a claim of R.S. 9:2791 immunity after a trial on the merits.
[6] In Van Pelt v. Morgan City Power Boat Ass'n, 489 So.2d 1346 (La.App. 1 Cir.1986), the court affirmed a summary judgment in favor of the owners of a large lake near Morgan City and about one-half mile from the "nearest residential concentration." The Supreme Court granted a writ but no further disposition is shown. 493 So.2d 627 (La.1986).