843 So.2d 433 (2003)
Karen J. RICHARD, Individually and on Behalf of Her Minor Child, Emily Richard
v.
Michael A. HALL, Screening Systems International, Louisiana Division, Inc., Allstate Insurance Company and Empire Insurance Company
No. 2002 CA 0366.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
*435 Gerald L. Walter, Jr., W. Arthur Abercrombie, Jr., John Stewart Tharp, Baton Rouge, Counsel for Plaintiff/Appellant Karen J. Richard, Individually and on behalf of her minor child, Emily Richard.
Gary A. Bezet, Robert E. Dille, Gregory M. Anding, Carol L. Galloway, Baton Rouge, Counsel for Defendant/Appellee Screening Systems International, Inc., Louisiana Division.
David I. Bordelon, Metairie, Counsel for Defendant/Appellee Empire Insurance Company.
Donald R. Smith, Baton Rouge, Counsel for Defendants Michael A. Hall and Allstate Insurance Company.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
FITZSIMMONS, J.
Karen J. Richard, individually and on behalf of her minor child, Emily Richard (Richard), appeals the trial court's grant of summary judgments in favor of Screening Systems International, Inc. (SSI). Following a review of the facts and the law, this court affirms.

BACKGROUND
SSI, a closely held corporation, entered into a duck hunting lease agreement. SSI paid the sum of $10,000.00 to Loch Leven Plantation for hunting privileges that were to be utilized by three upper level management executives of SSI. During one of the outings, Michael Hall, one of the authorized executives, accidentally, and fatally, shot another hunter, John Richard.[1] The instant suit was subsequently filed by Richard against Michael Hall, SSI, Allstate Insurance Company (Hall's homeowner's insurance provider), and Empire Insurance Company (SSI's general liability insurer). Richard alleged: (1) negligence on the part of Mr. Hall; (2) vicarious liability against SSI pursuant to Mr. Hall's actions in the course and scope of his employment; and (3) in the use of firearms. Empire Insurance Company filed a motion for summary judgment with regard to the vicarious liability and negligence claims.
The trial court signed a judgment on May 23, 2001, granting Empire's motion for summary judgment on the basis of vicarious liability; however, it denied summary judgment on the independent negligence claim against SSI. Empire Insurance Company filed a second motion for summary judgment on the basis of the Recreational Use Immunity Statutes. The trial court granted summary judgment, holding that Richard's claim of negligence by SSI was barred by the Recreational Use Immunity Statutes. The action against SSI was dismissed.
Richard appeals the grant of the summary judgments, and asserts the following assignments of error:
(1) The trial court erred in holding that as a matter of law, SSI was not vicariously liable for the negligent actions of its employee, Michael Hall, in the shooting death of John Richard.
*436 (2) The trial court erred in holding that SSI was a "lessee" of Loch Leven Plantation and, thus, entitled to immunity from its own negligent acts in the shooting death of John Richard pursuant to the Louisiana Recreational Use Immunity Statutes (La. R.S. 9:2791 and 9:2795).
(3) Alternatively, the trial court erred in its application of immunity under the Recreational Use Statutes, which do not permit immunity for any party when the property at issue is used as a commercial recreational development or facility.

DISCUSSION

Vicarious Liability
The initial summary judgment in favor of Empire determined that SSI was not vicariously liable for the act of its employee, Michael Hall, at the hunting camp. A court's determination that conduct is within the course and scope of employment for purposes of vicarious liability is a factual finding subject to the manifest error rule. Baumeister v. Plunkett, 95-2270, p. 7 (La.5/21/96), 673 So.2d 994, 998. However, in ascertaining whether summary judgment is appropriate, appellate courts review summary judgment de novo under the same criteria that govern the trial judge's consideration of whether a summary judgment is appropriate. Davis v. AMS Tube Corporation, XXXX-XXXX, p. 4 (La.App. 1 Cir. 6/22/01), 801 So.2d 466, 468, writ denied, 2001-2122 (La.11/2/01), 800 So.2d 877.
Vicarious liability is premised on La. C.C. art. 2320, which provides: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." Emoakemeh v. Southern University, 94-1194, p. 3 (La.App. 1 Cir. 4/7/95), 654 So.2d 474, 476. The vicarious liability of the master or employer is based on the foundation that a business enterprise cannot disclaim responsibility for accidents that could be considered characteristic of its activities. Ermert v. Hartford Insurance Company, 559 So.2d 467, 476 (La.1990). The burden of the court is to determine if the particular accident is a part of "the more or less inevitable toll of a lawful enterprise." Id. (quoting 5 F. Harper, F. James & O. Gray, The Law of Torts, § 26.7, at 28 (2d ed.1986)). Stated alternatively, if "the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service." Ermert, 559 So.2d at 477. Four variables to be considered when determining whether vicarious liability exists are whether the tortious act: (1) was primarily employment-rooted; (2) was reasonably incidental to performance of employment duties; (3) occurred during work hours; and (4) occurred on the employer's premises. Aycock v. Jenkins Tile Company, 96-2348, 96-2349, p. 5 (La.App. 1 Cir. 11/7/97), 703 So.2d 117, 121, writ denied, 97-3056 (La.2/13/98), 709 So.2d 753.
The facts in Ermert similarly involved an accidental shooting in a hunting camp. Decareaux, the president of, and a majority stockholder in, Nu-Arrow Fence Company, expended company funds on the hunting camp. The supreme court concluded that the trial court had not erred in determining that the Nu-Arrow employee was acting within the scope of his employment while he was at the camp. In its evaluation, the court emphasized that Decareaux, had "repeatedly and consistently used the hunting camp for business purposes[,]" specifically noting that he sold fences to almost every other member of the camp, and he had taken a number of his preferred customers and his employees to the camp for entertainment. The supreme *437 court concluded that one of Decareaux's motives was to provide a place to entertain customers and employees of Nu-Arrow. Ermert, 559 So.2d at 478.
The arrangement at Loch Leven does not analogously sustain the proposition that the hunting facility was provided for the purpose of furthering SSI's business. The three executives to whom exclusive use of the hunting facility was granted never took clients or other employees to hunt with them. Henry Watson, Sr., who negotiated the agreement with Loch Leven Plantation, and Henry A. Watson, Jr., the president of SSI and one of the authorized executives, testified that the hunting privileges were "perks" for upper management. There is simply no evidence in the record to suggest that the activities at the hunting facility provided its users with anything greater than personal entertainment.
In oral reasons, the court stated that, although the lease was purchased by SSI and listed as a business expense on its tax return, the evidence indicated that Mr. Hall was not required to be there as part of his duties. Moreover, "he was not performing business related duties at the time." This court does not find that the trial court erred in its grant of summary judgment in favor of Empire Insurance Company on the basis of the lack of vicarious liability on the part of SSI.

Lessee Status[2]
Richard contests the status of SSI as a lessee of Loch Leven Plantation within the contemplation of La. R.S. 9:2791 and 9:2795 of the Recreational Use Immunity Statutes. Louisiana Revised Statute 9:2791A provides in pertinent part:
An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping.... If such an owner, lessee or occupant give[s] permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one [sic] to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
Thereafter, La. R.S. 9:2795A(2) defines "owner" as the "possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises."
A lease is defined in La. C.C. art. 2669 as a "synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of a thing, or his labor, at a fixed price." Three elements are essential: the thing, the price, and the consent. La. C.C. art. 2670. The variable in contention is whether the hunting agreement fails to constitute a lease due to the lack of existence of "a thing."
SSI entered into an agreement for the use of the premises for hunting, which included the right to one of the blinds on the property. The trial court found that "[t]he thing being leased is the property for use for duck hunting." This court agrees that SSI leased the use of the hunting premises for the term of the duck hunting season at the agreed upon price of $10,000.00. The fact that the hunters rotated to different hunting blinds does not vitiate SSI's status as a lease holder within the purview of the Recreational Use Statutes.

*438 Immunity

The final assignment of error relative to SSI's negligence, vel non, in its failure to instruct and/or supervise its employees, presents the most complex legal issue. Louisiana Revised Statute 9:2791 B states, in part, that immunity conferred by the Recreational Use Statute "shall not apply when the premises are used principally for a commercial, recreational enterprise for profit[.]" It is undisputed that Loch Leven was a for-profit recreational enterprise.
The pivotal issue becomes whether SSI should be precluded from ascription to the protective veil of the Recreational Use Immunity Statutes because the owner/lessor of Loch Leven was operating the premises for a commercial, recreational enterprise. The facts in this case present a unique relationship in that SSI, and not the owner/lessor of Loch Leven, was the party that "[gave] permission to another to enter the premises for ... recreational purposes...." La. R.S. 9:2791 A. Moreover, SSI's provision of hunting privileges to its selected employees was recreational in character. Thus, SSI's use of the premises was not `principally for a commercial, recreational enterprise for profit[.]" Nor was said grant of permission to the three parties for a "commercial, recreational enterprise for profit...." La. R.S. 9:2791 B. Finally, the facts of this case are distinguishable from those in Reed v. Employers Mutual Casualty Company, 32,257 (La. App. 2 Cir. 9/22/99), 741 So.2d 1285, writs denied, 99-3060 (La.1/7/00), 752 So.2d 864, 99-3061 (La.1/7/00), 752 So.2d 864, in which a hunting club member's actions against another member were excluded from the immunity provisions established pursuant to La. R.S. 9:2791. The court in Reed characterized the defendant member as a mandatary of the hunting club lessee. Here, SSI was the lessee and occupant with the right to make land "available to the public for recreational purposes." Compare Reed, 32,257, p. 6, 741 So.2d at 1289.
We recognize that the Recreational Use Statutes constitute an impairment to the common or natural right and, therefore, are to be strictly interpreted. Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097, 1100 (La.1990); Keelen v. State, Department of Culture, Recreation and Tourism, 463 So.2d 1287, 1289 (La.1985). They must not be extended beyond their obvious meaning. Monteville, 567 So.2d at 1100. The language of La. R.S. 9:2791 prohibits applicability of the Recreational Use Statute when one party offers another party the use of the premises principally for commercial motives. Such is not the case with SSI. Its grant of permission to the three executives did not utilize the premises for commercial profit. Therefore, our interpretation that SSI qualifies for immunity pursuant to the dictates of La. R.S. 9:2791, et seq, does not constitute a broadening of the statute.
The judgments of the trial court are affirmed. Costs associated with this appeal are assessed to Karen J. Richard, individually and on behalf of her minor child, Emily Richard.
AFFIRMED.
PETTIGREW, J., dissents and Assigns Reasons.
GUIDRY, J., concurs and assigns reasons to wit: after applying a conflict of law analysis to this matter, it is clear that Louisiana law applies, thus warranting the plaintiff's concession.
PETTIGREW, J., dissenting.
I respectfully dissent from the majority's affirmance of the trial court.
*439 The vicarious liability of SSI for the reckless and negligent actions of its employee Michael Hall is governed by Ermert v. Hartford Insurance Company, 559 So.2d 467 (La.1990). In my humble opinion this is a business activity of SSI and falls outside of the scope of La. R.S. 9:2791 and 9:2795. At a minimum, there are material issues of fact in dispute as to whether it is a business activity, and therefore, summary judgment was not proper.
Finally, I am of the opinion that we are not dealing with a lease at all, but the purchase of a personal servitude or right-of-use, which would also exclude the application of La. R.S. 9:2791 and 9:2795. See La. Civ.Code arts. 639-644.
NOTES
[1] The victim, John Richard, was also an employee of SSI; however, he was not an authorized user of SSI's leasehold interest. He was hunting at Loch Leven Plantation as a guest of another person.
[2] Loch Leven Plantation is located in Mississippi; however, prior to trial, plaintiffs stipulated that Louisiana law applied to an immunity defense.